# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEDICT BATO, | 1:09-cv-00893-OWW-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| JAMES D. HARTLEY, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently incarcerated in the California Department of Corrections and Rehabilitation ("CDCR") following his conviction for attempted murder with use of a firearm. Petitioner was sentenced to life with the possibility of parole, plus a seven years sentence enhancement. Petitioner does not challenge the validity of his judgment; rather, he challenges the Board of Parole Hearings' (hereinafter "Board") 2007 decision finding him unsuitable for parole. Petitioner contends the Board's decision resulted in a violation of his due process rights.

On May 16, 2008, Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court, challenging the Board's 2007 decision. (Exhibit 1, to Answer.) The superior court denied the petition on July 10, 2008. (Exhibit 2, to Answer.) The court found there was some evidence to support the Board's conclusion that Petitioner was not suitable for parole. (Id.) The court cited the circumstances of the commitment offense, Petitioner's social history, prior association with drugs, and institutional behavior. (Id.)

1

Petitioner raised the same claims to the California Court of Appeal and California Supreme Court. (Exhibits 3 & 5, to Answer.) Both petitions were summarily denied. (Exhibits 4 & 6, to Answer.) In such circumstances, this Court "looks through" that decision and presumes it adopted the reasoning of the Los Angeles County Superior Court, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

Petitioner filed the instant petition for writ of habeas corpus on May 11, 2009, in the United States District Court for the Central District of California. (Court Doc. 1.) By order filed on May 19, 2009, the petition was transferred to this Court. Petitioner contends that there was insufficient evidence to determine that he remains an unreasonable risk to public safety if released and the Board unreasonably relied on the circumstances of his commitment offense.

Respondent filed an answer to the petition on August 21, 2009, and Petitioner filed a traverse on September 15, 2009. (Court Docs. 18, 19.)

## STATEMENT OF FACTS[1]

> Petitioner, along with codefendant Cayamendo and five others (Simangan, Oplac, Mendoza, Fontilea, and Obrique) were members of the "Long Beach Local Boys" gang. Previously, some of the members of a rival gang, the "Scott Royal Brothers Gang" had done a drive by shooting and the petitioner and his associates decided to retaliate. On September 4, 1990, Fontilea drove one car with the Petitioner and Obrigue as passengers; the other four went in a second car. Oplac and Petitioner were armed with a shotgun and a handgun, and fired shots at the three members of the "Scott Royal Brothers Gang." Victim Emery Curamen suffered shotgun wounds to the right arm and lower back and the other two victims suffered no injuries.

(Exhibit 2, to Answer, Opinion, at 1.)

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[1] This information is derived from Superior Court's July 10, 2008, decision.

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

      Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

      The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

      As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

>    (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
>    (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exhibit 1, attached Exhibit A.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

1 Id. at 1214.[2]

2     At Petitioner's 2007 hearing, the Board found him unsuitable based primarily on the following factors: (1) the circumstances of the commitment offense; (2) unstable social history, including association with gang members and drug/alcohol abuse; and (3) institutional behavior.

5     With regard to the commitment offense, the Board found it was carried out in a very dispassionate and calculated manner, involved multiple victims, and the motive was inexplicable. The superior court found that "there is some evidence to support the Board's finding that multiple victims were attacked, injured, or killed in the same or separate incidents. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(A)." (Exhibit 2, to Answer.) Some evidence supports this finding. Petitioner denies that he and his friends were members of the "Long Beach Local Boys" and that the shooting was in retaliation against rival gang members of the "Scott Royal Brothers neighborhood. However, there is no dispute that Petitioner armed himself with a shotgun and was sitting in the front passenger seat along with the driver and another individual. (Exhibit 1, to Answer, Transcript, at 14.) It is also undisputed that Petitioner shot at the three victims because of a previous shooting. (Id. at 15.) As a result, one of the victims suffered gunshot wounds to his right arm and lower back and the two other victims did not suffer any injury. Petitioner observed one of the victims fall to the ground and the group fled the scene. Although Petitioner denied that the shooting was in retaliation for an earlier gang-related shooting, he nonetheless admitted that he armed himself with a shotgun and fired several shots at multiple victims, causing injury to one of them. Based on this record, the superior court correctly concluded that some evidence supports the finding that multiple victims were attacked and injured.

22     The Board next considered and found that Petitioner had an unstable social history, including involvement in a gang and alcohol/drug abuse. 15 Cal. Code Regs. § 2402(b). Although Petitioner denied membership in a gang, the circumstances of the commitment offense

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

support the finding the shooting was a gang-related retaliation. In addition, Petitioner admitted that he drank alcohol and smoked marijuana. (Exhibit 1, to Answer, Transcript, at 22.) At the age of 18, Petitioner was convicted of possession of methamphetamine and was sentenced to a diversion program, which was incomplete due to the commitment offense. (Id. at 30.) Moreover, Petitioner admitted that he was under the influence of methamphetamine on the day of the commitment offense and was hanging around the wrong people. (Id. at 40.) At the hearing, Petitioner acknowledged that he was not using the 12-step program of AA/NA, nor was he aware of the 12-steps. (Id. at 32-33.) The Board was particularly concerned given Petitioner's 2002 violation for being under the influence of marijuana and 2003 violation for possession of tobacco. Both the Board and Psychologist recommended that Petitioner work on his 12-step program, as it is essential to his rehabilitation. Furthermore, the Board pointed out that the psychological report was not completely favorable because the level of risk of future violence increased from the low to moderate range to high end of moderate if he relapses and begins using alcohol/drugs and/or associates with gang members. (Id. at 37.) Based on the foregoing, some evidence supports the Board's finding that Petitioner's unstable social history, including prior drug use and lack of sufficient participation in programming continues to demonstrate he is danger to public safety is released.

The Board also found that Petitioner suffered five rules violation reports (CDC-115)-the most recent in April of 2003, for possession of tobacco.[3] (Exhibit 1, to Answer, Transcript at 32-33.) Of particular note, in 2002, Petitioner tested positive for being under the influence of marijuana. (Id.) Although not of a serious nature, Petitioner also suffered seven counseling chronos (CDC-128)-the most recent in 2002 for passing contraband, i.e. a sock through a chain link fence of the clothing distribution center to another inmate.[4] (Id. at 33.) 15 Cal. Code Regs. § 2402(c)(6). This evidence was properly considered and is relevant to whether Petitioner remains a danger and threat to public safety given his history involving drugs.

---

[3] A CDC-115 documents misconduct which is a violation of law or which is not minor in nature. 15 Cal. Code. Regs. § 3312(a)(3).

[4] A CDC-128 documents minor misconduct. 15 Cal. Code Regs. § 3312(a)(2).

1  The Board also considered and commended Petitioner for obtaining his GED and
2  completion of the vocational janitor program. (Exhibit 1, to Answer, Transcript at 57.)
3  However, on balance, the positive aspects did not outweigh the factors of unsuitability.
4  In sum, there is some evidence to support the Board's findings that Petitioner's
5  commitment offense, past association with drugs, lack of sufficient self-help programming, and
6  institutional behavior, demonstrate that he is currently a threat to public safety. Accordingly, the
7  superior court's decision is not contrary to or an unreasonable application of clearly established
8  Supreme Court authority, nor is it an unreasonable determination of the facts in light of the
9  evidence. 28 U.S.C. § 2254(d)(1), (2).

10  RECOMMENDATION
11  Based on the foregoing, it is HEREBY RECOMMENDED that:
12  1.  The instant petition for writ of habeas corpus be DENIED; and
13  2.  The Clerk of Court be directed to enter judgment in favor of Respondent.
14  This Findings and Recommendation is submitted to the assigned United States District
15  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of
16  the Local Rules of Practice for the United States District Court, Eastern District of California.
17  Within thirty (30) days after being served with a copy, any party may file written objections with
18  the court and serve a copy on all parties. Such a document should be captioned "Objections to
19  Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served
20  and filed within ten (10) court days (plus three days if served by mail) after service of the
21  objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
22  636 (b)(1)(C). The parties are advised that failure to file objections within the specified time
23  may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th
24  Cir. 1991).
25  IT IS SO ORDERED.
26  Dated:   September 25, 2009            /s/ Dennis L. Beck
                                       UNITED STATES MAGISTRATE JUDGE
27
28